United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>Plaintiff,<br><br>v.<br><br>VOIP-PAL.COM, INC.,<br><br>Defendant. | Case No. 20-CV-02460-LHK<br><br>**ORDER DENYING CONSOLIDATED MOTION TO DISMISS**<br><br>Re: Dkt. No. 32 |
| AT&T CORP., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VOIP-PAL.COM, INC.,<br><br>Defendant. | Case No. 20-CV-02995-LHK |
| CELLCO PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>VOIP-PAL.COM, INC.,<br><br>Defendant. | Case No. 20-CV-03092-LHK |

United States District Court
Northern District of California

Plaintiffs Apple, Inc. ("Apple"); AT&T Corp., AT&T Services, Inc., and AT&T Mobility (collectively, "AT&T"); and Cellco Partnership d/b/a Verizon Wireless ("Verizon") (collectively, "Plaintiffs") each sue Defendant VoIP-Pal.com, Inc. ("Defendant") for a declaration of non-infringement and invalidity of U.S. Patent No. 10,218,606 ("the '606 patent"). In addition, Apple sues Defendant for a declaration of non-infringement and invalidity of U.S. Patent No. 9,935,872 ("the '872 patent"). Before the Court is Defendant's consolidated motion to dismiss Plaintiffs' complaints.[1] Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES Defendant's motion to dismiss.

## I.      BACKGROUND

This case represents the latest chapter in a long dispute between the parties regarding whether Plaintiffs infringe Defendant's patents, which relate to a system for routing internet-protocol communications. Below, the Court discusses in turn: (1) the parties; (2) Defendant's first set of lawsuits against the Plaintiffs, originally filed in the District of Nevada in 2016 ("the 2016 cases"); (3) Defendant's second set of lawsuits against Apple and Amazon, originally filed in the District of Nevada in 2018 ("the 2018 cases"); (4) Defendant's most recent lawsuits against Plaintiffs, filed in the Western District of Texas in April of 2020 ("the Texas cases"); and (5) the instant cases, which were filed by Plaintiffs in this Court in April and May of 2020.

### A.  The Parties

Plaintiff Apple is a California corporation with its principal place of business in Cupertino, California. ECF No. 1 ¶ 7. Apple "designs, manufactures, and markets mobile communication and media devices and personal computers, and sells a variety of related software, services, accessories, networking solutions, and third-party digital content and applications." *Id.* Apple "provides, supports, and/or operates messaging technology, including iMessage, an instant messaging service supported by Apple's Messages application and computer infrastructure that

---

[1] Briefing was consolidated in these three cases. For ease of reference and unless otherwise specified, the Court refers to documents filed in the Apple litigation, Case No. 20-CV-02460-LHK.

United States District Court
Northern District of California

1    allows smartphone and desktop users to send messages including text, images, video and audio to

2    other users." *VoIP-Pal.Com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110, 1117 (N.D. Cal. 2019)

3    (quotation omitted).

4        Plaintiff AT&T Corp. is a New York corporation with its principal place of business in

5    Bedminster, New Jersey. Case No. 20-CV-02995-LHK, ECF No. 1 ¶ 7. Plaintiff AT&T Services,

6    Inc. is a Delaware corporation with its principal place of business in Dallas, Texas. *Id.* ¶ 8.

7    Plaintiff AT&T Mobility LLC is a Delaware corporation with its principal place of business in

8    Atlanta, Georgia. *Id.* ¶ 9. AT&T "supports and operates a messaging platform . . . [that] allows

9    smartphone users to send messages including text, images, video and audio to others." *VoIP-*

10    *Pal.Com*, 375 F. Supp. 3d at 1117 (quotation omitted). AT&T also supports Voice over Internet

11    Protocol products and services as well as a Wi-Fi based calling platform. *Id.* at 1117–18.

12        Plaintiff Cellco Partnership d/b/a Verizon Wireless is a Delaware corporation with its

13    principal place of business in Basking Ridge, New Jersey. Case No. 20-CV-03092-LHK, ECF No.

14    1 ¶ 7. Verizon "supports and operates a messaging platform . . . [that] allows smartphone users to

15    send messages including text, images, video and audio to others." *VoIP-Pal.Com*, 375 F. Supp. 3d

16    at 1118 (quotation omitted). Verizon also supports Voice over Internet Protocol products and

17    services and a Wi-Fi based calling platform. *Id.*

18        Defendant VoIP-Pal is a Nevada corporation with its principal place of business in

19    Bellevue, Washington. ECF No. 1 ¶ 8. Defendant owns a portfolio of patents relating to Internet

20    Protocol based communication. *VoIP-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 930 (N.D.

21    Cal. 2019).

22    **B.  The 2016 Cases**

23        On February 9, 2016, Defendant sued Apple in the District of Nevada for infringement of

24    U.S. Patent Nos. 8,542,815 ("the '815 patent"), and 9,179,005 ("the '005 patent"), both of which

25    relate to a system for routing calls between a caller and a callee over Internet Protocol. *VoIP-*

26    *Pal.Com*, 375 F. Supp. 3d at 1118, 1122. The following day, Defendant sued Verizon and AT&T

27    in the District of Nevada for infringement of the same patents. *Id.* On October 6, 2016, Defendant

28

1   sued Twitter in the District of Nevada for infringement of the same patents. *Id.* at 1121. The

2   District of Nevada stayed the cases pending *inter partes* review. *Id.*

3        After the stays were lifted, on February 28, 2018, Twitter moved to change venue to the

4   Northern District of California. *VoIP-Pal.Com, Inc. v. Twitter, Inc.*, Case No. 16-CV-02338, 2018

5   WL 3543031, at *1 (D. Nev. July 23, 2018). On July 23, 2018, the District of Nevada granted

6   Twitter's motion for change of venue. *Id.* On October 1, 2018, the District of Nevada granted

7   Verizon and Defendant's stipulation to transfer the case. *VoIP-Pal.Com*, 375 F. Supp. 3d at 1121.

8   On October 4, 2018, the District of Nevada granted a similar stipulation by AT&T and Defendant.

9   *Id.* The following day, the District of Nevada granted a similar stipulation by Apple and

10  Defendant. *Id.* As a result, all four cases were transferred to this Court, where they were

11  consolidated.

12       On March 25, 2019, this Court granted Apple, AT&T, Verizon, and Twitter's consolidated

13  motion to dismiss all four cases. *Id.* at 1117. In a 45-page order, the Court concluded that the '815

14  and '005 patents were unpatentable under 35 U.S.C. § 101. *Id.* at 1138, 1144. On March 16, 2020,

15  the Federal Circuit affirmed this Court's decision. *VoIP-Pal.Com, Inc. v. Apple, Inc.*, 798 F. App'x

16  644, 645 (Fed. Cir. 2020). On May 18, 2020, the Federal Circuit denied Defendant's petition for

17  panel or en banc rehearing. *VoIP-Pal.Com, Inc. v. Twitter*, Case No. 2019-1808, ECF No. 99.

18  **C. The 2018 Cases**

19       On May 24, 2018, Defendant sued Apple in the District of Nevada for infringement of four

20  more patents: U.S. Patent Nos. 9,537,762 ("the '762 patent"); 9,813,330 ("the '330 patent");

21  9,826,002 ("the '002 patent"); and 9,948,549 ("the '549 patent"). *VoIP-Pal.Com*, 411 F. Supp. 3d

22  at 934. Like the two patents that were the subject of the 2016 Cases, these four patents relate to a

23  system for routing communications over Internet Protocol. *Id.* at 931. On June 15, 2018,

24  Defendant sued Amazon in the District of Nevada for infringement of the same patents. *Id.* The

25  lawsuits against Apple and Amazon were transferred from the District of Nevada to this Court,

26  where they were consolidated and related to the 2016 cases. *Id.*

27       On November 1, 2019, this Court granted Apple and Amazon's consolidated motion to

28

United States District Court
Northern District of California

1  dismiss both cases with prejudice. *Id.* at 930. Just as with the 2016 Cases, the Court concluded, in

2  a 68-page order, that the four patents were unpatentable under 35 U.S.C. § 101. *Id.* at 941. On

3  November 3, 2020, the Federal Circuit affirmed this Court's decision. *VoIP-Pal.Com, Inc. v.*

4  *Apple, Inc.*, 828 F. App'x 717, 717 (Fed. Cir. 2020). If Defendant chooses to petition for

5  rehearing, the petition is due on December 17, 2020. *See* Order, *VoIP-Pal.Com, Inc. v. Apple, Inc.*,

6  Case No. 2020-1241 (Fed. Cir. Nov. 9, 2020). If Defendant chooses to petition the United States

7  Supreme Court for a writ of certiorari, Defendant's petition is due on April 3, 2021. *See* Order,

8  March 19, 2020 (ordering that "the deadline to file any petition for a writ of certiorari due on or

9  after the date of this order is extended to 150 days from the date of the lower court judgment").

10  **D. The Texas Cases**

11  In April of 2020, Defendant sued Apple, AT&T, Verizon, Amazon, Facebook, and Google

12  in the Waco Division of the Western District of Texas for infringement of the '606 patent. *VoIP-*

13  *Pal.Com, Inc. v. Facebook, Inc.*, Case No. 20-CV-00267-ADA, ECF No. 1 (W.D. Tex. Apr. 2,

14  2020); *VoIP-Pal.Com, Inc. v. Google LLC*, Case No. 20-CV-00269-ADA, ECF No. 1 (W.D. Tex.

15  Apr. 3, 2020); *VoIP-Pal.Com, Inc. v. Amazon.Com, Inc.*., Case No. 20-CV-00272-ADA, ECF No.

16  1 (W.D. Tex. Apr. 6, 2020);  *VoIP-Pal.Com, Inc. v. Apple Inc.*, Case No. 20-CV-00275-ADA,

17  ECF No. 1 (W.D. Tex. Apr. 7, 2020);  *VoIP-Pal.Com, Inc. v. AT&T Inc.*, Case No. 20-CV-00325-

18  ADA, ECF No. 1 (W.D. Tex. Apr. 24, 2020); *VoIP-Pal.Com, Inc. v. Verizon Comms., Inc.*, Case

19  No. 20-CV-00275-ADA, ECF No. 1 (W.D. Tex. Apr. 24, 2020). Like the six patents that were the

20  subjects of the 2016 and 2018 Cases, the '606 patent relates to a system for routing

21  communications over Internet Protocol. Specifically, the '606 patent shares a common

22  specification, title, parent application, inventors, and owner with Defendants' six other patents that

23  were examined by this Court in the 2016 and 2018 cases. *Compare* ECF No. 1-1 *with VoIP-*

24  *Pal.Com*, *Inc. v. Apple Inc.*, Case No. 18-CV-06217-LHK, ECF No. 1-2.

25  On September 29, 2020, United States District Judge Alan Albright of the Western District

26  of Texas stayed the six cases pending before him until this Court enters an order on the instant

27  motion to dismiss and the motion to dismiss in a related declaratory judgment action, *Twitter, Inc.*

United States District Court
Northern District of California

28

5

*v. VoIP-Pal.com, Inc.*, Case No. 20-CV-02397-LHK. *See VoIP-Pal.Com, Inc. v. Facebook, Inc.*, Case No. 20-CV-00267-ADA, ECF No. 47 (W.D. Tex. Apr. 2, 2020).

### E. The Instant Cases

After Defendant filed the Texas cases, Plaintiffs filed the instant cases in the Northern District of California. On April 10, 2020, Apple sued Defendant for a declaration of non-infringement and invalidity of the '606 patent. ECF No. 1. On April 14, 2020, Apple amended its complaint to also seek a declaration of non-infringement and invalidity of the '872 patent. ECF No. 10. Like the '606 patent, the '872 patent shares a common specification, title, parent application, inventors, and owner with Defendants' six other patents that were examined by this Court in the 2016 and 2018 cases. *Compare* ECF No. 10-2 *with VoIP-Pal.Com*, *Inc. v. Apple Inc.*, Case No. 18-CV-06217-LHK, ECF No. 1-2.

On April 30, 2020, AT&T also sued Defendant for a declaration of non-infringement and invalidity of the '606 patent. Case No. 20-CV-02995-LHK, ECF No. 1. On May 5, 2020, Verizon filed a similar complaint against Defendant. Case No. 20-CV-03092-LHK, ECF No. 1. In addition, on April 7, 2020, Twitter sued Defendant for a declaration of non-infringement and invalidity of the '606 patent. Case No. 20-CV-02397-LHK, ECF No. 1.

On April 27, 2020, this Court granted Apple's motion to relate its declaratory judgment action to the 2016 case against Apple. ECF No. 18. Similarly, on May 22, 2020, this Court granted AT&T's motion to relate its declaratory judgment action to the 2016 case against AT&T. Case No. 20-CV-02995-LHK, ECF No. 23. On May 26, 2020, this Court granted Verizon's motion to relate its declaratory judgment action to the 2016 case against Verizon. Case No. 20-CV-03092-LHK, ECF No. 18. On May 26, 2020, this Court related the Apple, AT&T, Verizon, and Twitter cases. ECF No. 24. On June 4, 2020, this Court consolidated the motion to dismiss briefing for the Apple, AT&T, and Verizon cases but ordered that the motion to dismiss in the Twitter case be briefed separately. ECF No. 26.

On July 10, 2020, Defendant filed a consolidated motion to dismiss the instant case. ECF No. 32 ("Mot."). On July 31, 2020, Plaintiffs filed a consolidated opposition. ECF No. 43

6

("Opp'n"). On August 14, 2020, Defendant filed a reply. ECF No. 44 ("Reply).

## II.    LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(1)

A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. While lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.*

Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B.  Motion to Dismiss Under Rule 12(b)(2)

In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists. *See In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th

United States District Court
Northern District of California

Cir. 2019). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)).

However, this standard "is not toothless," and the party asserting jurisdiction "cannot simply rest on the bare allegations of its complaint." *In re Boon Global Ltd.*, 923 F.3d at 650 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Thus, courts may consider declarations and other evidence outside the pleadings to determine whether it has personal jurisdiction. *See id.* At this stage of the proceeding, "uncontroverted allegations in plaintiff's complaint must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger*, 374 F.3d at 800). On the other hand, courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

### C. Motion to Dismiss Under Rule 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a complaint for improper venue. Once the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When considering a motion to dismiss for improper venue, a court may consider facts outside of the pleadings. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

Pursuant to 28 U.S.C. § 1406(a), if the court determines that venue is improper, the court must either dismiss the action or, if it is in the interests of justice, transfer the case to a district or division in which it could have been brought. Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is a matter within the sound discretion of the district court. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

### D. Leave to Amend

8

United States District Court
Northern District of California

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

Defendant moves to dismiss the instant three cases for three reasons: (1) this Court should decline to exercise jurisdiction under the first-to-file rule; (2) this Court lacks personal jurisdiction over Defendant; and (3) venue is improper. Mot. at 8–18. In addition, Defendant argues that Apple's claim for a declaration of non-infringement and invalidity of the '872 patent should be dismissed because the Court lacks subject matter jurisdiction over that claim. Mot. at 18–21. Defendant's argument stems from the fact that Defendant has not sued Apple for infringement of the '872 patent.

The Court first analyzes Defendants' arguments regarding the first-to-file rule, personal jurisdiction, and venue. The Court's analysis of these arguments applies equally to each of the instant three cases. The Court then addresses Defendant's argument regarding subject matter jurisdiction, which only pertains to Apple's claim regarding the '872 patent.

### A.   First-To-File Rule

Defendant first argues that this Court should exercise its discretion to dismiss the instant three cases under the first-to-file rule. Mot. at 5–15. The first-to-file rule is "a doctrine of federal

9

comity . . . that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). The first-to-file rule is "intended to avoid conflicting decisions and promote judicial efficiency." *Id.* "Resolution of whether the second-filed action should proceed presents a question sufficiently tied to patent law that the question is governed by [Federal Circuit] law." *Futurewei Tech., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).

The first-to-file rule "is not absolute; exceptions may be made if justified by 'considerations of judicial and litigant economy, and the just and effective disposition of disputes.'" *Acacia*, 737 F.3d at 708 (quoting *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005)). "Exceptions . . . are not rare," but "[t]here must be . . . sound reason that would make it unjust or inefficient to continue the first-filed action." *Elecs. for Imaging*, 394 F.3d at 1347 (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937–38 (Fed. Cir. 1993)).

"Application of the first-to-file rule is generally a matter for a district court's discretion, exercised within governing legal constraints." *Acacia*, 737 F.3d at 708. In determining whether the first-to-file rule should be applied, "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Cipla*, 681 F.3d at 1299 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)). To apply the first-to-file rule, courts must generally consider: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade, Inc. v. Uniweld Prods.*, 946 F.2d 622, 625–26 (9th Cir. 1991).

Defendant contends that all three of these factors favor application of the first-to-file rule. Mot. at 7. First, Defendant contends that the chronology of the actions favors applying the rule because the Texas cases were filed before the instant cases. Mot. at 7. Defendant contends that the parties are sufficiently similar because the parties in the instant cases are exactly the same as the parties in the Texas cases, with the exception of AT&T Mobility. *Id.* Finally, Defendant argues that the issues are the same because both the Texas cases and the instant cases concern whether Plaintiffs have infringed the '606 patent. *Id.*

Case Nos. 20-CV-02460-LHK, 20-CV-02995-LHK, 20-CV-03092-LHK
ORDER DENYING CONSOLIDATED MOTION TO DISMISS

United States District Court
Northern District of California

1      However, Defendant's argument completely ignores the history of disputes between the

2 parties regarding whether Plaintiffs infringe Defendant's family of patents related to

3 communications over internet protocol, including a set of cases filed in 2016 and another set filed

4 in 2018, all of which were adjudicated by this Court. *See* p. 3–5, *supra* (recounting the history of

5 the 2016 and 2018 cases). Based on the existence of these prior cases, the Court determines that

6 the first-to-file rule should not be applied here because there is "sound reason that would make it

7 unjust or inefficient to continue" the Texas cases. *Elecs. for Imaging*, 394 F.3d at 1347 (quoting

8 *Genentech*, 998 F.2d at 937–38).

9      Specifically, it would be more efficient for this Court to resolve the parties' dispute

10 regarding the '606 patent because this Court already resolved the parties' disputes regarding the

11 patentability of Defendant's six other patents in the 2016 and 2018 cases. *See VoIP-Pal.Com*, 375

12 F. Supp. 3d at 1110; *VoIP-Pal.Com, Inc*, 411 F. Supp. 3d at 926. The six patents that the Court

13 analyzed in the 2016 and 2018 cases share a common specification, title, parent application,

14 inventors, and owner with the '606 patent. *Compare* ECF No. 1-1 *with VoIP-Pal.Com, Inc. v.*

15 *Apple Inc.*, Case No. 18-CV-06217-LHK, ECF No. 1-2. Moreover, the 2016, 2018, and instant

16 cases involve substantially similar technology and accused products. In the 2016 and 2018 cases,

17 this Court wrote 113 pages addressing the validity of Defendants' patents and was subsequently

18 affirmed by the Federal Circuit. *See VoIP-Pal.Com*, 375 F. Supp. 3d at 1110 (45-page opinion),

19 *aff'd*, 798 F. App'x at 645; *VoIP-Pal.Com, Inc*, 411 F. Supp. 3d at 926 (68-page opinion), , *aff'd*,

20 828 F. App'x at 717. By contrast, the Western District of Texas has not previously adjudicated the

21 parties' disputes regarding this family of patents. Accordingly, given this Court's familiarity with

22 these disputes, it would be more efficient for this Court to adjudicate the instant cases.[2]

23

24 [2] Defendant argues that, "[w]ithout a dismissal, judicial resources will be inefficiently spent
because 'the same issues addressed by the [Texas] court will be needlessly reconsidered' by this

25 Court." Mot. at 8 (quotation omitted). However, Defendant's argument is actually a reason for this
Court to consider the instant cases. Because this Court has already become familiar with the

26 Defendant's family of patents and Plaintiff's allegedly infringing technologies, having the Texas

27 court address these issues would mean that the same issues addressed by this Court would be
needlessly reconsidered by the Texas court.

28

11

Case Nos. 20-CV-02460-LHK, 20-CV-02995-LHK, 20-CV-03092-LHK
ORDER DENYING CONSOLIDATED MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Furthermore, it would be more efficient for the instant cases to be heard in this district because of the relative ease of access to sources of proof. Indeed, a significant amount of evidence relevant to potentially infringing conduct is located in this district, where one of the Plaintiffs, Apple, is incorporated and has its principal place of business. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). In addition, hearing the cases in this district would be more convenient for witnesses from Plaintiff Apple, which is located in this district. *In re Apple*, --- F. 3d ---, 2020 WL 6554063, at *7 (Fed. Cir. 2020) (concluding that the location of witnesses weighed in favor of transferring a patent infringement case against Apple from the Western District of Texas to this district).

In similar circumstances, the Federal Circuit recently granted a writ of mandamus permitting Apple to transfer a patent infringement case from the Western District of Texas to this district. *Id.* at *3. The Federal Circuit concluded that the district court had abused its discretion in denying Apple's motion to transfer because evidence relevant to the infringing conduct, as well as witnesses, were located in this district, where Apple is headquartered. *Id.* at *4, *7. The Federal Circuit also emphasized that there were significant connections between this district and the events that gave rise to the suit — Apple's development of potentially infringing products. *Id.* at *9. Finally, the Federal Circuit explained that other cases in the district presented overlapping issues. *Id.* at *8.  For similar reasons, it would be more efficient for the instant cases to be heard by this Court.

In addition to promoting judicial efficiency, permitting this Court to hear the instant cases would also achieve the first-to-file rule's goal of "avoid[ing] conflicting decisions." *Cipla*, 681 F.3d at 1299. This Court has already concluded in two opinions that six of Defendant's patents failed to recite patent-eligible subject matter, and this Court's opinions were affirmed by the Federal Circuit. *VoIP-Pal.Com*, 375 F. Supp. 3d at 1138, 1144, *aff'd*, *VoIP-Pal.Com, Inc.*, 798 F. App'x at 645; *VoIP-Pal.Com, Inc*, 411 F. Supp. 3d at 941, *aff'd*, 828 F. App'x at 717. Given that the '606 patent shares a common specification, title, parent application, inventors, and owner with

12

Defendants' six other patents that were examined by this Court in the 2016 and 2018 cases, the Western District of Texas's decision on the '606 patent could conflict with this Court's prior orders. This potential conflict is exactly what the first-to-file rule is intended to avoid. *Cipla*, 681 F.3d at 1299.

Furthermore, Defendant never provides any reason why these cases should be heard by Judge Albright in Waco, Texas. Defendant is neither incorporated in nor headquartered in Texas, much less in Waco, which is located over 100 miles from Austin. ECF No. 1 ¶ 8. Defendant never alleges that witnesses or evidence relevant to this case are located in Waco or Texas, or that the events that gave rise to this case occurred in Waco or Texas. These circumstances suggest that Defendant may be forum shopping, attempting to avoid this Court's unfavorable decisions by filing in another district.

Defendant argues that Plaintiffs "have engaged in blatant forum shopping." Mot. at 11. The Court disagrees. Whether or not this district is Plaintiffs' preferred forum, Plaintiffs had legitimate reasons to file in this district, including the presence of Plaintiff Apple's headquarters in this district and the fact that this Court resolved related cases involving patents from the same family that share a common specification, title, parent application, inventor, and owner as well as substantially similar technology and accused products as the instant cases. By contrast, Defendant filed its latest cases in Waco, Texas, where Defendant lacks ties.

The Court declines to apply the first-to-file rule to permit Defendant to forum shop. Indeed, courts have recognized that the first-to-file rule should not be applied in cases of forum-shopping. *See Genentech*, 998 F.2d at 938 (explaining that "first-filed suits have sometimes been dismissed when forum shopping was the only motive for the filing"); *Alexander v. Franklin Res., Inc.*, Case No. 06-7121, 2007 WL 518859, at *4 (N.D. Cal. Feb. 14, 2007) (declining to apply the first-to-file rule because "[o]ne could reasonably infer forum-shopping here, where the same plaintiff . . . filed a similar lawsuit in New Jersey, and after receiving unfavorable rulings from that court, filed the instant case").

Moreover, courts are less likely to apply the first-to-file rule when the cases are filed close

Case Nos. 20-CV-02460-LHK, 20-CV-02995-LHK, 20-CV-03092-LHK
ORDER DENYING CONSOLIDATED MOTION TO DISMISS

United States District Court
Northern District of California

1    together. *See, e.g.*, *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749

2    (7th Cir. 1987) (declining to apply first-to-file rule when second case was filed four days later);

3    *Assoc. Mills, Inc. v. Regina Co., Inc.*, 675 F. Supp. 446, 448 (N.D. Ill. 1987) (twelve days later).

4    The instant cases the Northern District of California were each filed within days of their

5    counterparts in the Western District of Texas. Apple filed its lawsuit in this district just three days

6    after being sued in the Western District of Texas. Similarly, AT&T filed its complaint six days

7    after being sued, and Verizon filed its complaint eleven days after being sued. Because the cases

8    were filed so close together, the first-to-file rule has less force. Thus, the Court declines to apply

9    the first-to-file rule in favor of the Texas cases.

10        **B. Personal Jurisdiction**

11        Defendant next argues that this Court lacks personal jurisdiction over it. Mot. at 15–17.

12   The Court applies Federal Circuit law to the question of whether the Court has personal

13   jurisdiction over Plaintiffs' infringement claims because "the jurisdictional issue is 'intimately

14   involved with the substance of the patent laws.'" *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552

15   F.3d 1324, 1328 (Fed. Cir. 2008) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir.

16   1995)). "Determining whether personal jurisdiction exists over an out-of-state defendant involves

17   two inquiries: whether a forum state's long-arm statute permits service of process, and whether the

18   assertion of personal jurisdiction would violate due process." *Avocent*, 552 F.3d at 1329 (quoting

19   *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)).

20        California's long arm statute, Cal. Civ. Proc. Code § 410.10, is co-extensive with federal

21   due process requirements, and therefore the jurisdictional analyses under California law and

22   federal due process merge into one. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state

23   may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the

24   United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)

25   ("California's long-arm statute . . . is coextensive with federal due process requirements, so the

26   jurisdictional analyses under state law and federal due process are the same.").

27        For a court to exercise personal jurisdiction over a defendant consistent with due process,

28

United States District Court
Northern District of California

1    that defendant must have "certain minimum contacts" with the relevant forum "such that the

2    maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

3    *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457,

4    463 (1940)).

5            A court may exercise either general or specific jurisdiction over a defendant. *Avocent.*, 552

6    F.3d at 1330. "To be subject to general jurisdiction, a defendant business entity must maintain

7    'continuous and systematic general business contacts' with the forum, even when the cause of

8    action has no relation to those contacts." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de*

9    *Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009) (quotation omitted). In the instant case,

10   Plaintiffs do not argue that Defendant is subject to general jurisdiction in this forum. Accordingly,

11   the Court considers whether the Court has specific jurisdiction over Defendant.

12           Specific jurisdiction is appropriate when a suit "aris[es] out of or relate[s] to the

13   defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

14   U.S. 408, 414 n. 8 (1984). To determine whether a court can exercise specific jurisdiction

15   consistent with due process, the Federal Circuit considers: "(1) whether the defendant

16   'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of

17   or relates to' the defendant's activities with the forum; and (3) whether assertion of personal

18   jurisdiction is 'reasonable and fair.'" *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d

19   1346, 1353 (Fed. Cir. 2017) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir.

20   2001)). "The first two factors correspond with the minimum contacts prong of the [International

21   Shoe] analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of

22   the analysis." *Inamed*, 249 F.3d at 1360. The Court initially considers the first two factors. The

23   Court then considers the third factor.

24       **1.  Whether the Defendant Purposefully Directed Its Activities at Residents of the
             Forum, and Whether the Claim Arises Out of or Relates to Those Activities**

25

26           The first two factors require the Court to determine whether the defendant purposefully

27   directed its activities at residents of the forum, and whether the claim arises out of or relates to

28
                                                  15

1  those activities. *Xilinx*, 848 F.3d at 1353. With respect to the first factor, "it is essential in each

2  case that there be some act by which the defendant purposefully avails itself of the privilege of

3  conducting activities within the forum State, thus invoking the benefits and protections of its

4  laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). As to the second factor, "the

5  court must determine whether 'the suit aris[es] out of or relate[s] to the defendant's contacts with

6  the forum.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–

7  24 (2011)).

8       The plaintiff has the burden of establishing these two factors. *Elecs. for Imaging v. Coyle*,

9  340 F.3d 1344, 1350 (Fed. Cir. 2003). "Without discovery and a record on jurisdiction, [the Court]

10  must resolve all factual disputes in the plaintiff's favor." *Nuance Comms., Inc. v. Abbyy Software*

11  *House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). "[W]here the plaintiff's factual allegations are not

12  directly controverted, [they] are taken as true for purposes of determining jurisdiction." *Id.*

13  (quoting *Akro*, 45 F.3d at 1543). "To survive a motion to dismiss in the absence of jurisdictional

14  discovery, plaintiffs need only make a prima facie showing of jurisdiction." *Id.*

15       When the plaintiff is bringing a declaratory judgment for non-infringement, the claim

16  "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents

17  in suit." *Avocent*, 552 F.3d at 1332. "The relevant inquiry for specific personal jurisdiction then

18  becomes to what extent has the defendant patentee 'purposefully directed [such enforcement

19  activities] at residents of the forum,' and the extent to which the declaratory judgment claim

20  'arises out of or relates to those activities.'" *Id.* (quoting *Breckenridge Pharm., Inc. v. Metabolite*

21  *Labs*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)). "A declaratory judgment claim arises out of the

22  patentee's contacts with the forum state only if those contacts 'relate in some material way to the

23  enforcement or the defense of the patent.'" *Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d

24  1134, 1138 (Fed. Cir. 2018) (quoting *Avocent*, 552 F.3d at 1336).

25       Under Federal Circuit law, "ordinary cease-and-desist notices sent by a patentee to an

26  alleged infringing party in a different state are not sufficient to subject the patentee to specific

27  jurisdiction in that state." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011).

28

"The crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters." *Breckenridge*, 444 F.3d at 1366. Indeed, "certain other patent enforcement actions, taken in conjunction with the issuance of cease-and-desist letters, are sufficient to support specific jurisdiction." *Id.* "Examples of these 'other activities' include initiating judicial or extrajudicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Avocent*, 552 F.3d at 1334. These activities need not be directed towards parties in the lawsuit. *Id.*

In the instant case, the Court concludes that Defendant has purposefully directed its enforcement activities towards the forum state by: (1) litigating six lawsuits on claims of infringement of patents in the same family in the Northern District of California (2) stipulating to transfer five lawsuits, four of them against Plaintiffs in the instant three cases, to this district; (3) never contesting personal jurisdiction in the Northern District of California in those six lawsuits; (4) engaging multiple California law firms in its infringement lawsuits; and (5) meeting with Apple in the Northern District of California in 2016 regarding claims of infringement of patents in the same family. The Court first considers Defendant's litigation efforts in this district and then considers Defendant's meetings with Apple.

First, the fact that a defendant "has engaged in judicial patent enforcement (with respect to the patents at issue or a related patent)" in the same district can support personal jurisdiction. *ActiveVideo Networks, Inc. v. TransVideo Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1097–98 (N.D. Cal. 2013); *see also Avocent*, 552 F.3d at 1338–39 (noting that a lawsuit in the same forum on the same patent "is a significant contact with the forum materially related to the enforcement of the relevant patent"). For example, another court in this district found that a defendant had purposefully directed its activities to the forum by litigating six cases in this district "regarding the very same or related patents." *Id.* at 1096–97. Furthermore, the District of New Jersey found that a defendant had purposefully directed its activities to the forum by suing other defendants in that district for patent infringement. *Pro Sports Inc. v. West*, 639 F. Supp. 2d 475, 481 (D.N.J. 2009). In addition,

1    the District of Maryland concluded that personal jurisdiction existed when a defendant had filed "a

2    prior suit against [the plaintiff in the district] with respect to related patents." *Neuralstem, Inc. v.*

3    *StemCells, Inc.*, 573 F. Supp. 2d 888, 898 (D. Md. 2008).[3]

4           Accordingly, Defendant's act of litigating six cases in this district regarding related patents

5    demonstrates that Defendant has purposefully directed its enforcement activities towards the

6    forum state. Defendant points out that, unlike in *ActiveVideo*, *Pro Sports*, and *Neuralstem*,

7    Defendant did not file its infringement lawsuits in this district—rather, Defendant filed in Nevada.

8    However, Defendant stipulated to transfer its infringement lawsuits against Apple, Verizon, and

9    AT&T to this district. Defendant then litigated those cases in this district without contesting

10   personal jurisdiction.

11          Furthermore, even if Defendant had opposed the transfer of its infringement lawsuits

12   against Apple, AT&T, and Verizon to this district, Defendant still would have purposefully

13   availed itself of the courts in California because Defendant continued to prosecute its lawsuits in

14   this district. In *Kyocera Communications v. Potter Voice Technologies*, the district court relied on

15   this same reasoning. Case No. 13-CV-0766-H, 2013 WL 2456032, at *3 (S.D. Cal. June 5, 2013).

16   In that case, the defendant had initially brought suit in Colorado and opposed transfer to

17   California. *Id.* The district court nonetheless concluded that the defendant had purposefully availed

18   itself of the California courts because the defendant had continued prosecuting the lawsuit in

19   California. *Id.* The instant cases more strongly support a finding of personal jurisdiction because

20   Defendant stipulated to transfer its lawsuits to this district and then did not contest personal

21   jurisdiction in this district. Accordingly, the Court concludes that Defendant's infringement

22

23   _____

24   [3] In *Xilinx*, the Federal Circuit stated: "We have considered forum-related activities of the patentee
     with respect to the patents in suit that do not necessarily relate to the particular controversy, such
25   as exclusive licensing, though at the same time we have (appropriately) rejected the existence of
     contacts concerning other patents as being pertinent to the minimum contacts analysis." *Xilinx*,
26   848 F.3d at 1353. However, *Xilinx* itself did not raise the question of whether courts can consider
     litigation involving other patents. Moreover, this statement is not specific to litigation involving
27   related patents, like the patents at issue here.

28
     Case Nos. 20-CV-02460-LHK, 20-CV-02995-LHK, 20-CV-03092-LHK
     ORDER DENYING CONSOLIDATED MOTION TO DISMISS

*United States District Court*
*Northern District of California*

litigation, involving substantially similar technology and accused products as well as six patents from the same family that share a common specification, title, parent application, inventors, and owner as the patents at issue here, demonstrates that Defendant purposefully directed its enforcement activities towards this district.

In addition, the Court notes that Defendant has engaged California lawyers for the 2016 and 2018 cases, as well as the instant cases. Courts have found that defendants purposefully directed their enforcement activities to the forum state by hiring lawyers from that state to prosecute their infringement actions. *See, e.g.*, *Kyocera*, 2013 WL 2456032, at *3 (concluding that the defendant had purposefully directed its enforcement activities to California because the defendant was suing California residents for infringement and had "retained counsel in California for that lawsuit"). So too here.

Furthermore, beyond stipulating to transfer these Plaintiffs' cases to the Northern District of California, Defendant made efforts to enforce its family of patents in this district. For example, Defendant's representative met with Apple in Sunnyvale, California, located in this district, regarding Apple's potential infringement of Defendant's patents. Modi Decl. ¶ 2. Courts have concluded that similar meetings can give rise to personal jurisdiction. *See Xilinx*, 848 F.3d at 1354 (finding personal jurisdiction over a defendant in a declaratory judgment action because the defendant "purposefully directed its activities to California when it sent multiple notice letters to [the plaintiff] and traveled there to discuss [the plaintiff's] alleged patent infringement and potential licensing arrangements"); *Elecs. for Imaging*, 340 F.3d at 1351 (finding personal jurisdiction over defendants in a declaratory judgment action where "two representatives of defendants visited [plaintiff's] facility in California"). The Court comes to the same conclusion in the instant three cases.[4]

---

[4] In addition to its meeting with Apple, Defendants likely investigated their infringement claims against Apple and Twitter, which reside in this district, and that investigation would have also constituted purposefully directing enforcement activities at the forum. *See PharmaNet, Inc. v. DataSci Ltd. Liability Co.*, Case No. 08-2965, 2009 WL 396180, at *13 (D.N.J. 2009) (concluding that there was personal jurisdiction because "it is likely that Defendant took steps to investigate

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In sum, the Court concludes that Defendant has undertaken substantial enforcement activities in California, including prosecuting their six lawsuits for infringement of patents from the same family, meeting with Apple in California regarding infringement, and retaining counsel in California to prosecute their lawsuits. "Far from being random, fortuitous, or attenuated . . . the totality of these contacts sufficiently make out [Plaintiffs'] case that [Defendant], by 'engag[ing] in significant in significant activities in California . . . purposefully directed [its] activities to California." *Elecs. for Imaging*, 340 F.3d at 1351.

Finally, the claim at issue in the instant cases arises out of or relates to these activities because the activities described above relate to patent enforcement. *Avocent*, 552 F.3d at 1330. Although Defendant points out that not all these activities relate to the enforcement of the patents at issue in this case, the Court points out that courts have found personal jurisdiction even where the enforcement activities were tied to related patents. *ActiveVideo*, 975 F. Supp. 2d at 1097–98 (concluding that there was personal jurisdiction over the defendant based on the defendant's previous infringement lawsuits in the district with respect to the patents at issue or a related patent); *NeuralStem*, 573 F. Supp. 2d at 898 (finding that there was personal jurisdiction over the defendant because the defendant voluntarily filed infringement cases in the district with respect to highly related patents). The patents in the instant cases share a common specification, title, parent application, inventors, and owner with Defendants' six patents in the 2016 and 2018 cases before this Court. *Compare* ECF Nos. 1-1, 10-2 *with VoIP-Pal.Com, Inc. v. Apple Inc.*, Case No. 18-CV-06217-LHK, ECF No. 1-2. Moreover, the 2016 and 2018 and instant cases share substantially similar technology and accused products. Accordingly, the Court concludes that plaintiffs have made a prima facie showing on the first two factors, as required for specific jurisdiction.

**2. Whether Assertion of Personal Jurisdiction is Reasonable and Fair**

The Court next considers whether the assertion of personal jurisdiction is reasonable and

---

and compile its case against [a company in the forum] prior to the suit's filing in order to comply with it[s] obligations under Federal Rule of Civil Procedure 11(b)).

Case Nos. 20-CV-02460-LHK, 20-CV-02995-LHK, 20-CV-03092-LHK
ORDER DENYING CONSOLIDATED MOTION TO DISMISS

fair. The reasonableness inquiry "is not limited to the specific facts giving rise to, or relating to, the particular litigation." *Xilinx*, 848 F.3d at 1355. For the reasonableness inquiry, the burden is on the defendant, who must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in *Burger King* [*Corporation v. Rudewicz*, 471 U.S. 462, 475–77 (1985)]." *Breckenridge*, 444 F.3d 1356, 1363 (Fed. Cir. 2006). The five factors outlined in *Burger King* include: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Avocent*, 552 F.3d at 1331 (citing *Burger King*, 471 U.S. at 475–77). The Court addresses each factor in turn.

First, Defendant would incur a minimal burden of litigating in this district. Defendant is based in Washington, and several of its executives are located near the West Coast, in Washington and Utah. ECF No. 1 ¶ 8; ECF No. 43-36. Accordingly, only minimal travel is required to get to Northern California.

Moreover, the Federal Circuit has repeatedly concluded that a defendant's previous lawsuits in a forum demonstrates that the defendant would not face an undue burden in litigating there. *See Xilinx*, 848 F.3d at 1357–58 (explaining that "[t]he lack of significant burden on [the defendant] is also evidenced by [the defendant's] prior litigations in California itself," including seven patent infringement lawsuits there); *Acorda Therapeutics Inc. v. Mylan Pharma. Inc*, 817 F.3d 755, 764 (Fed. Cir. 2016) (concluding that the burden on defendant "will be at most modest, as [the defendant] . . . has litigated many . . . lawsuits" in the forum); *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, (Fed. Cir. 1996) (concluding that litigation in California was not unduly burdensome because the defendant had filed previous lawsuits in California). In the instant case, Defendant has prosecuted six lawsuits in this district. Thus, the Court concludes that litigating the instant cases would not be unduly burdensome.

The Federal Circuit has also concluded that litigation in a forum would not be unduly

21

burdensome when the defendant has traveled to that forum. *See Xilinx*, 848 F.3d at 1357 (finding that a defendant corporation based in Germany would have a minimal burden of litigating in California because the defendant's representatives had traveled to California to meet with the plaintiff's representatives). Defendant's representative traveled to California to meet with a representative of Apple. Accordingly, the Court concludes that Defendant would incur a minimal burden by litigating in this district, so the first factor does not weigh against a finding of personal jurisdiction.

As to the second factor, "California has a substantial interest in protecting its residents from unwarranted claims of patent infringement." *Elecs. for Imaging*, 340 F.3d at 1352. One plaintiff in the instant three cases, Apple, is incorporated and has its principal place of business in California. Thus, the second factor weighs in favor of personal jurisdiction.

On the third factor, Plaintiffs also have "an undisputed interest in protecting [themselves] from patent infringement." *Id*. Plaintiff Apple, which has its principal place of business in California, "indisputably has an interest in protecting itself from patent infringement by obtaining relief 'from a nearby federal court' in its home forum." *Xilinx*, 848 F.3d at 1356. Thus, the third factor weighs in favor of personal jurisdiction.

On the fourth factor, the most efficient resolution of the instant cases would be possible in this district. As explained above, this Court has already presided over six cases alleging infringement of Defendant's patents from the same family by all but two of the same Plaintiffs. Moreover, this Court has already written 113 pages of opinions analyzing Defendant's patents, which were subsequently affirmed by the Federal Circuit. *See* p. 11, *supra*. Thus, the most efficient resolution of the instant cases would be for them to be heard in this Court, and the fourth factor weighs for personal jurisdiction.

Finally, on the fifth factor, "[t]here does not appear to be any conflict between the interests of California and any other state, because 'the same body of federal patent law would govern the patent invalidity claim irrespective of the forum.'" *Xilinx*, 848 F.3d at 1356 (quoting *Elecs. for Imaging*, 340 F.3d at 1352). Thus, the fifth factor does not weigh against a finding of personal

22

1   jurisdiction.

2          In sum , Defendant "fail[s] to convince [this Court] that this is one of the 'rare' situations

3   in which sufficient minimum contacts exist but where the exercise of jurisdiction would be

4   unreasonable." *Elecs for Imaging*, 340 F.3d at 1352. Accordingly, the Court concludes that it has

5   personal jurisdiction over the Defendant in the instant cases.

6      **C. Improper Venue**

7          Defendant additionally argues that venue is improper. Mot. at 17–18. Venue in declaratory

8   judgment actions for non-infringement of a patent is governed by the general venue statute, 28

9   U.S.C. § 1391. Under § 1391(b)(1), venue is proper in any judicial district where a defendant

10  resides. *Id.* § 1391(b)(1). Under § 1391(c)(2), for purposes of venue, a corporate defendant

11  "reside[s] . . . in any judicial district in which such defendant is subject to the court's personal

12  jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). Because the Court has

13  personal jurisdiction over Defendant in the instant cases, venue is also proper in this district.

14     **D. Subject Matter Jurisdiction**

15         Only Apple seeks declaratory judgment of non-infringement or invalidity as to the '872

16  patent. Neither Verizon nor AT&T assert this claim. Therefore, Defendant's final argument

17  addresses only Apple's claim for a declaratory judgment of non-infringement and invalidity as to

18  the '872 patent. Mot. at 18–21. Defendant argues that the Court lacks subject matter jurisdiction

19  over Apple's claim for a declaratory judgment as to the '872 patent because Defendant has not yet

20  sued Apple for infringement of the '872 patent.

21         Generally, dismissal for lack of subject matter jurisdiction under Federal Rule of Civil

22  Procedure 12(b)(1) "is a procedural question not unique to patent law," and is therefore governed

23  by regional circuit law. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002).

24  However, "[w]hether an actual case or controversy exists so that a district court may entertain an

25  action for declaratory judgment of non-infringement and/or invalidity is governed by Federal

26  Circuit law." *3M Co v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

27         The Declaratory Judgment Act states that, "[i]n the case of actual controversy within its

28

United States District Court
Northern District of California

23

1    jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may

2    declare the rights and other legal relations of any interested party in seeking such declaration." 28

3    U.S.C. § 2201(a). The phrase "actual controversy" refers to "cases" and "controversies" that are

4    justiciable under Article III of the Constitution. *Assoc. for Molecular Pathology v. U.S. Patent &*

5    *Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *rev'd in part on other grounds by Assoc.*

6    *for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013). Thus, without a case or

7    controversy, there cannot be a claim for declaratory relief. *ActiveVideo Networks*, 975 F. Supp. at

8    1086.

9         The Court has subject matter jurisdiction in a declaratory judgment action when "the facts

10   alleged, under all the circumstances, show that there is a substantial controversy, between parties

11   having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

12   declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Under the

13   "all the circumstances" test, courts have "unique and substantial discretion in deciding whether to

14   declare the rights of litigants." *Id.* at 136.

15        In case law following *MedImmune*, the Federal Circuit has explained that, in the context of

16   patent disputes, an actual controversy requires "an injury in fact traceable to the patentee," which

17   requires "both (1) an affirmative act by the patentee related to the enforcement of his patent rights

18   and (2) meaningful preparation to conduct potentially infringing activity." *Assoc. for Molecular*

19   *Pathology*, 689 F.3d at 1318. In the instant case, the parties do not dispute the second factor

20   because Apple already markets the products and services at issue. Opp'n at 18.

21        In order to meet the affirmative act requirement, "more is required than 'a communication

22   from a patent owner to another party, merely identifying its patent and the other's product line.'

23   [But] [h]ow much more is required is determined on a case-by-case analysis." *3M*, 673 F.3d at

24   1378–79. In *Cepheid v. Roche Molecular Systems, Inc.*, another Court in this district listed factors

25   that the Federal Circuit and Supreme Court have generally considered in determining whether the

26   patentee has taken an affirmative act: (1) the strength of threatening language in communications

27   between the parties; (2) the depth and extent of infringement analysis conducted by the patent

28

United States District Court
Northern District of California

United States District Court
Northern District of California

holder; (3) whether the patent holder imposed a deadline to respond; (4) any prior litigation between the parties; (5) the patent holder's history of enforcing the patent at issue; (6) whether the patent holder's threats have induced the alleged infringer to change its behavior; (7) the number of times the patent holder has contacted the alleged infringer; (8) whether the patent holder is a holding company with no income other than enforcing patent rights; (9) whether the patent holder refused to give assurance it will not enforce the patent; (10) whether the patent holder has identified a specific patent and specific infringing products; (11) the extent of the patent holder's familiarity with the product prior to suit; (12) the length of time that transpired after the patent holder asserted infringement; and (13) whether communications initiated by the plaintiff appear as an attempt to create a controversy. *ActiveVideo*, 975 F. Supp. 2d at 1087–88 (citing *Cepheid v. Roche Molecular Systems, Inc.*, Case No C-12-4411 EMC, 2013 WL 184125, at *6 (N.D. Cal. Jan. 17, 2013)).

Analyzing "all the circumstances," the Court concludes that Defendant has engaged in an affirmative act sufficient to confer jurisdiction over Apple's declaratory judgment claim for non-infringement of the '872 patent. *MedImmune, Inc.*, 549 U.S. at 127. The Court comes to this conclusion based on the extensive litigation campaign undertaken by Defendant against Apple on related patents. The Federal Circuit has repeatedly held that prior litigation on related patents can be an affirmative act that supports subject matter jurisdiction over a declaratory judgment claim. See *Arkema*, 706 F.3d at 1358 (concluding that prior litigation was a "sufficient affirmative act on the part of the patentee for declaratory judgment purposes"); *Danisco*, 744 F.3d 1331 ("[A] history of patent litigation between the same parties involving related technologies, products, and patents is another circumstance to be considered, which may weigh in favor of the existence of subject matter jurisdiction."); *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007) ("[R]elated litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents.").

In the instant case, Defendant has engaged in a litigation campaign to assert its related

patents against Apple, filing three lawsuits that allege that Apple has infringed seven patents. *See VoIP-Pal.Com, Inc. v. Apple Inc.*, 375 F. Supp. 3d at 1110 (lawsuit against Apple for infringing two related patents); *VoIP-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d at 926 (lawsuit against Apple for infringing four related patents); *VoIP-Pal.Com, Inc. v. Apple Inc.*, Case No. 20-CV-00275-ADA, ECF No. 1 (W.D. Tex. Apr. 7, 2020) (lawsuit against Apple for infringing one related patent). These seven patents share a common specification, title, parent application, inventors, and owner with the '872 patent, and the Apple technology implicated is the same. *Compare* ECF No. 10-2 *with VoIP-Pal.Com, Inc. v. Apple Inc.*, Case No. 18-CV-06217-LHK, ECF No. 1-2. Accordingly, the prior litigation between the parties weighs heavily in favor of a finding that Defendant has engaged in an affirmative act related to the enforcement of its patent rights.

Furthermore, Defendant has publicly stated that it will continue to assert its patent rights against Apple until it is successful. In an April 8, 2020 press release, which was issued after the dismissal of Defendant's first lawsuit was affirmed by the Federal Circuit and immediately after Defendant filed its most recent lawsuit against Apple, Defendant's CEO stated:

> [W]e are undeterred in our fight to assert our intellectual property rights. . . . I can tell you; we are not finished . . . We remain firm in our resolve to achieve monetization for our shareholders and will continue to see this fight through until a successful resolution is reached.

ECF No. 10-9. Although the Court does not find this statement sufficient to demonstrate an affirmative act on its own, the statement provides helpful context as to Defendant's intentions with respect to asserting its patent rights against Apple.

Assessing "all the circumstances," the Court concludes that Defendant has engaged in an affirmative act related to the enforcement of its patent rights based on Defendant's extensive history of litigation against Apple for infringement of related patents and Defendant's statement that Defendant would continue to litigate until Defendant achieved monetization for Defendant's shareholders. *See Monolithic Power Sys.*, No. C 07-2363 CW, 2007 WL 2318924, at *3 (N.D. Cal. Aug. 13, 2007) ("[T]he assertion of rights, evidenced through a prior lawsuit between the same

parties regarding the same technology . . . and solidified through the express press release statement indicating an intent to sue alleged patent infringers, presents enough evidence to establish the case or controversy required for declaratory judgment jurisdiction."). Thus, the Court has subject matter jurisdiction over Apple's claim for a declaration of non-infringement and invalidity of the '872 patent.[5]

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's consolidated motion to dismiss Plaintiffs' complaints.

**IT IS SO ORDERED.**

Dated: December 11, 2020

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

_____

[5] In the motion to dismiss, Defendant stresses that Defendant has not made a specific threat to Apple regarding the '872 patent. Mot. at 20. However, at a case management conference in the 2016 cases, Defendant represented to this Court that Defendant did not then intend to file additional lawsuits against Plaintiffs. ECF No. 43-4 at 10 (The Court: "Are we just going to keep getting more continuations and then are you going to assert those four continuations against the other Defendants here?" Counsel: "Your Honor, at this time there's no intention to assert any of the other patents against any of the other defendants. I can't promise you that that would never change, but that is not the current intent."). Despite these representations, Defendant chose to file additional lawsuits, including the 2018 cases and the Texas cases.

United States District Court
Northern District of California